UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

Andrew Linares,

                Plaintiff,            Case No: 2:25−cv−11027

v.                                       Hon. Robert J. White

Lowe's Pro Supply Co,

                Defendant.
_____/

## BRIEF IN SUPPORT OF MOTION TO VACATE ORDER (ECF NO. 16) AS VOID UNDER FED. R. CIV. P. 60(b)(4)

**NOW COMES**, Plaintiff Andrew Linares, appearing *in propria persona*, respectfully submits this Brief in Support of the accompanying Motion to Vacate the Court's Order of May 2, 2025 (ECF No. 16) as void under Federal Rule of Civil Procedure 60(b)(4). This Brief demonstrates that the targeted Order is void because the Court exceeded its subject-matter jurisdiction, as strictly limited by the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, when it improperly adjudicated the scope of the parties' binding arbitration agreement—a determination reserved for the arbitrator. Accordingly, Plaintiff requests vacatur of the void Order and entry of an order compelling arbitration.

## INTRODUCTION

**"'[T]o decide whether an arbitration agreement encompasses a dispute[,] a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim.'"** Mitchell v. Equifax Info. Servs., LLC, No. 3:20-cv-00162-FDW-DSC, slip op. at 3 (W.D.N.C. Nov. 5, 2020) (quoting J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 319 (4th Cir. 1988)).

This foundational principle governing arbitration scope was disregarded by this Court in

its Order of May 2, 2025 (ECF No. 16). In denying Plaintiff leave to file a curative First Amended Complaint, the Court acted manifestly beyond its subject-matter jurisdiction as strictly circumscribed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. Having implicitly determined that a valid arbitration agreement, contained within the Lowe's Terms of Sale, governed the parties' underlying commercial dispute, the Court was jurisdictionally foreclosed by the FAA from proceeding further to adjudicate the substantive scope of arbitrable claims.

This prohibition stemmed from two independent yet reinforcing grounds: first, the parties clearly and unmistakably delegated questions of arbitrability, including scope, to the arbitrator by incorporating the rules of the American Arbitration Association ("AAA"); second, even absent such delegation, questions concerning the scope of a concededly valid arbitration agreement are presumptively reserved for the arbitrator under controlling Supreme Court and Sixth Circuit precedent.

The Court's denial of leave to amend, predicated entirely on its *ultra vires* determination that the seller's claim fell outside the arbitration clause's scope, constitutes a fundamental jurisdictional defect rendering the resultant Order (ECF No. 16) void *ab initio* and requiring vacatur under Fed. R. Civ. P. 60(b)(4).

PROCEDURAL HISTORY

1. **Initial Dismissal (ECF No. 10):** On April 16, 2025, the Court dismissed Plaintiff's original complaint, finding it barred by the *Rooker-Feldman* doctrine as an improper challenge to a state-court default judgment against Hatsoff Holdings, Inc.

2. **First Motion for Leave to Amend (ECF No. 11):** On April 17, 2025, Plaintiff filed a Motion for Leave to File a First Amended Complaint (FAC), attaching the proposed FAC as Exhibit A. This motion explicitly aimed to cure the *Rooker-Feldman* defects identified

      in ECF No. 10 by removing Hatsoff, narrowing relief, and seeking only to compel arbitration for Plaintiff individually.

3. **Denial of First Motion (ECF No. 12):** On April 24, 2025, the Court denied ECF No. 11. Critically, the Court did not find the *Rooker-Feldman* cure insufficient. Instead, it introduced a new rationale: interpreting the arbitration clause (quoted from Plaintiff's proposed FAC) as covering only "claims by Customer," it concluded Lowe's (seller's) nonpayment claim was outside the scope, rendering the amendment futile.

4. **Simultaneous Filings (ECF Nos. 13 & 14):** On April 25 and 27, 2025, Plaintiff filed two motions concurrently: 1) Renewed Motion for Leave to Amend (ECF No. 13): Reasserting the request to file the FAC, primarily reiterating the arguments from ECF No. 11 regarding the cure of *Rooker-Feldman* issues. 2) Motion for Reconsideration (ECF No. 14): Specifically challenging the new arbitration scope/futility reasoning introduced by the Court in ECF No. 12, arguing the Court misconstrued the clause and contract law. Supported by Declaration (ECF No. 15).

5. **Order Denying Both Motions (ECF No. 16 - Target Order):** On May 2, 2025, the Court denied both motions. 1) It denied the Motion for Reconsideration (ECF No. 14) as an improper "rehash" (PageID.147-148). 2) It denied the Renewed Motion for Leave (ECF No. 13) by reiterating the exact same arbitration scope/futility reasoning from ECF No. 12, again without addressing the *Rooker-Feldman* cure (PageID.148).

LEGAL STANDARD: VOIDNESS UNDER RULE 60(b)(4)

Rule 60(b)(4) affords relief from a final order where "the judgment is void." This is not a mechanism to remedy mere legal error. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). Rather, voidness under Rule 60(b)(4) arises from "a fundamental jurisdictional

defect," such as a lack of subject-matter jurisdiction, or a violation of due process. *Id*. at 271.

When a court acts beyond the scope of the authority conferred upon it by statute, its resultant orders are void. *See Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904-05 (6th Cir. 2006). Unlike other Rule 60(b) subsections, relief under 60(b)(4) is mandatory; if the order is void, the Court lacks discretion and must vacate it. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995).

ARGUMENT

The Order denying Plaintiff leave to amend (ECF No. 16) suffers from a fundamental jurisdictional defect rendering it void. The Court's dispositive finding—that amendment would be futile because the seller's underlying claim was purportedly non-arbitrable—was predicated on the Court exceeding its severely limited authority under the FAA.

A. **The FAA Mandates Enforcement and Divests Courts of Jurisdiction Over Arbitrable Merits and Scope Disputes.**

The FAA represents a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). This policy requires courts to "rigorously enforce agreements to arbitrate." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). The Act strictly defines and limits the judicial role to "gateway" questions: (1) whether a valid agreement to arbitrate exists, and (2) whether the agreement covers the particular dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Once these gateway conditions are satisfied, the FAA divests the court of authority to proceed further on the merits or procedural aspects of the arbitrable claims. 9 U.S.C. §§ 3, 4; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006). Its sole remaining functions are to compel arbitration

and stay or dismiss the judicial proceedings. *Id*.

**B. The Court Lacked Jurisdiction to Determine Arbitrability Because the Parties Clearly and Unmistakably Delegated That Question to the Arbitrator.**

The FAA's jurisdictional limits were unequivocally triggered here because the parties, via the Lowe's Terms of Sale, expressly delegated gateway questions of arbitrability—including the very scope determination the Court improperly undertook—to the arbitrator. While courts typically decide gateway issues, parties may agree to arbitrate arbitrability if there is "clear and unmistakable" evidence of such intent. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010).

The Sixth Circuit, joining the overwhelming consensus of federal circuits, has definitively held that the incorporation of the American Arbitration Association (AAA) rules into an arbitration agreement constitutes clear and unmistakable evidence of the parties' intent to delegate gateway issues to the arbitrator. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) ("We now join the majority of our sister circuits and hold that the incorporation of the AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *see also Kone Inc v. Chenega Worldwide Support, LLC*, No. 20-cv-999 (DLF), slip op. at 7-9 (D.D.C. Mar. 3, 2021) (collecting extensive circuit precedent).

This is because the AAA rules explicitly grant this power to the arbitrator. AAA Commercial Arbitration Rule R-7(a) states: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, **scope**, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." (Emphasis added).

Here, the Lowe's Terms of Sale mandate that arbitration "shall be resolved by binding arbitration... under the current applicable rules, procedures, and protocols of the American

Arbitration Association (AAA)". (Terms of Sale, § 5) By incorporating the AAA rules, the parties clearly and unmistakably agreed that the arbitrator, not the Court, would decide questions of scope. Therefore, the specific question the Court addressed in its May 2 Order (ECF No. 16)—whether "All claims by Customer" encompassed claims initiated by Lowe's—was a gateway question contractually reserved for the arbitrator. The Court lacked subject-matter jurisdiction to decide it.

> **C. Alternatively, Even if Jurisdiction Existed, the Court Impermissibly Usurped the Arbitrator's Role by Adjudicating Claim-Specific Arbitrability.**

Even setting aside the dispositive delegation to the AAA rules, the Court's analysis contravened the FAA's allocation of decision-making authority. The Supreme Court and the Sixth Circuit have clarified that questions of "procedural arbitrability"—such as waiver, delay, conditions precedent, or, critically, the interpretation of the scope of arbitrable issues under a concededly valid agreement—are presumptively reserved for the arbitrator, not the court. *Howsam*, 537 U.S. at 84-85; *Smith v. Dean Witter Reynolds, Inc.*, 102 F. App'x 940, 941 (6th Cir. 2004) (holding, post-*Howsam*, that the district court erred in deciding the timeliness/eligibility of claims under NYSE rules, as that was a procedural question for the arbitrator); *see also Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 398 (6th Cir. 2014).

This Court crossed that line. In ECF Nos. 12 and 16, after implicitly acknowledging the valid arbitration agreement, the Court embarked upon a substantive interpretation of the clause's scope. It parsed the phrase "claims by Customer" and concluded, as a matter of contract interpretation, that this language excluded claims initiated by the seller (Lowe's), even if arising from the same contractual relationship. (ECF No. 12, PageID.129-130; ECF No. 16, PageID.148). This analysis—determining which party's claims arising under the contract were

subject to the arbitration clause—is precisely the type of scope interpretation that *Howsam* and *Smith* reserve for the arbitrator once a valid agreement is found. It required the Court to delve into the meaning and application of the contract's terms beyond the mere existence of the arbitration clause, thereby usurping the arbitral function. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (courts must avoid ruling on potential merits when deciding arbitrability). The Court compounded this error by inverting the strong federal presumption that any doubts concerning scope be resolved *in favor of* arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 24-25.

    D. **The Denial of Leave to Amend, Resting Entirely on Ultra Vires Determinations, Renders ECF No. 16 Void.**

The jurisdictional infirmity fatally infects the Court's denial of Plaintiff's Renewed Motion for Leave to Amend (ECF No. 13) within the challenged Order, ECF No. 16. The sole basis articulated by the Court for finding the proposed amendment futile was its conclusion, derived either from its disregard of the delegation to the rules of the AAA or its improper scope analysis, that the underlying seller's claim was non-arbitrable. (ECF No. 16, PageID.148). The futility determination was thus entirely derivative of, and inseparable from, the Court's *ultra vires* jurisdictional overreach.

Because the Court lacked subject-matter jurisdiction under the FAA to conduct the claim-specific scope analysis—whether due to delegation (Argument B) or improper usurpation of the arbitral function (Argument C)—its resulting conclusion of futility based upon it is jurisdictionally baseless. An order predicated on such a fundamental jurisdictional defect is void *ab initio*. *See Espinosa*, 559 U.S. at 271; *Days Inns*, 445 F.3d at 904-05. Consequently, the operative portions of ECF No. 16 denying leave to amend must be vacated pursuant to the

mandatory provisions of Rule 60(b)(4). The FAA provides the "exclusive remedy" for challenging arbitration-related matters once a valid agreement is found, and judicial actions exceeding the FAA's strict limits are invalid. *See Bachman Sunny Hill Fruit Farms, Inc. v. Producers Agric. Ins. Co.*, 56 F.4th 1086, 1092 (6th Cir. 2023).

## E. The Court's Procedural Handling Underscores the Fundamental Nature of the Jurisdictional Defect.

The jurisdictional error rendering ECF No. 16 void did not occur in a vacuum. The procedural trajectory of this case demonstrates how the Court arrived at its *ultra vires* scope determination by deviating from standard procedural norms and failing to address the arguments properly before it. This context further illuminates why the FAA jurisdictional limitation is the dispositive issue rendering the Order void.

1. **Initial Dismissal on Specific Grounds:** The Court initially dismissed the complaint (ECF No. 10) on a specific jurisdictional ground: the *Rooker-Feldman* doctrine.
2. **Plaintiff's Targeted Cure:** In response, Plaintiff sought leave to file a First Amended Complaint (ECF Nos. 11 & 13) meticulously designed to cure the identified *Rooker-Feldman* defect.
3. **Unaddressed Cure and Shift in Rationale:** In denying leave (ECF Nos. 12 & 16), the Court *never* addressed whether Plaintiff's proposed amendments successfully cured the *Rooker-Feldman* defect. Instead of analyzing the effectiveness of the cure, the Court abruptly shifted its rationale, introducing, *sua sponte*, its interpretation of the arbitration clause's scope as a new basis for denial (ECF No. 12, PageID.129-130; ECF No. 16, PageID.148).
4. **Improper Dismissal of Reconsideration as "Rehash":** Recognizing the Court's shift,

Plaintiff filed a Motion for Reconsideration (ECF No. 14) specifically challenging the newly introduced arbitration scope rationale from ECF No. 12. Yet, in ECF No. 16, the Court dismissed this motion as an improper "rehash" (PageID.147-148), despite it being Plaintiff's first opportunity to brief that specific rationale.

5. **Denial Resting Solely on the Jurisdictional Error:** By dismissing the reconsideration motion improperly and simultaneously denying the renewed motion for leave (ECF No. 13) by simply reiterating the new scope/futility rationale, the Court ensured that its denial rested exclusively on the jurisdictionally impermissible scope analysis. It bypassed any ruling on the *Rooker-Feldman* cure and refused to substantively consider the arguments against its new scope interpretation. This procedural path highlights that the denial in ECF No. 16 was fundamentally predicated on the Court exceeding its FAA-limited jurisdiction, making the resulting Order void under Rule 60(b)(4).

## CONCLUSION

The Court's Order of May 2, 2025 (ECF No. 16) is void under Fed. R. Civ. P. 60(b)(4) because the Court exceeded its subject-matter jurisdiction as strictly limited by the Federal Arbitration Act. By incorporating the AAA rules, the parties clearly and unmistakably delegated questions of arbitrability, including scope, to the arbitrator, divesting this Court of authority to decide that issue. Alternatively, even absent delegation, questions regarding the scope of a valid arbitration agreement are presumptively for the arbitrator. The Court lacked authority to interpret the scope of the agreement concerning specific claims or defenses. Its denial of leave to amend based entirely on this *ultra vires* scope analysis renders the Order void. Plaintiff respectfully requests that this Court GRANT the Motion to Vacate, VACATE the Order dated May 2, 2025 (ECF No. 16) as void, and enter an order compelling arbitration of the underlying dispute

pursuant to the parties' binding agreement and the FAA.

Dated May 5, 2025

Respectfully submitted,

_____
Andrew Linares
*In Pro Per*
4450 Harding Street
Dearborn Heights, MI 48125
734-205-8788